**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| VIP PRODUCTS, LLC, an Arizona limited liability company, | No. 25-2027 |
| *Plaintiff-ctr-defendant - Appellant*, | D.C. No. 2:14-cv-02057-SMM |
| v. | |
| UNITED STATES OF AMERICA, | OPINION |
| *Intervenor - Appellee*, | |
| JACK DANIEL'S PROPERTIES, INC., a Delaware corporation, | |
| *Defendant-ctr-claimant - Appellee*. | |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted May 20, 2026
Phoenix, Arizona

Filed August 4, 2026

Before: MARSHA S. BERZON, MILAN D. SMITH, JR., AND ANDREW D. HURWITZ, Circuit Judges.

Opinion by Judge M. Smith, Jr.

## SUMMARY[*]

### Trademark Law

The panel vacated the district court's permanent injunction in favor of Jack Daniel's Properties, Inc., and remanded to the district court for entry of judgment in favor of VIP Products, LLC, on Jack Daniel's claim for trademark dilution under the Federal Trademark Dilution Act.

Jack Daniel's claimed that VIP's "Bad Spaniels" squeaky dog toy diluted its marks by associating its famed whiskey with dog excrement. After a trial, the district court entered a permanent injunction in favor of Jack Daniel's. Following an appeal, the district court entered summary judgment in favor of VIP on the dilution claim. Jack Daniel's appealed. At the parties' request, this court summarily affirmed. The Supreme Court vacated and remanded, and this court remanded to the district court, which held that VIP was liable for dilution by tarnishment and entered a permanent injunction.

Under the Federal Trademark Dilution Act, dilution by tarnishment means an association arising from the similarity

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

between a mark or trade name and a famous mark that harms the reputation of the famous mark. The panel held that to prove dilution of its mark by tarnishment, a plaintiff must establish that its mark is famous, the allegedly diluting mark is similar to the famous one, and the diluting mark creates a mental association with the famous mark likely to damage the famous mark's reputation.

The panel concluded that Jack Daniel's did not meet its burden to show dilution by tarnishment. The only marks it proved famous were "Jack Daniel's" and its registered trade dress. Similarity was not disputed, but neither Bad Spaniels nor the toy's trade dress facially tarnished Jack Daniel's corresponding famous marks, and neither was portrayed in an unwholesome or unsavory context that was likely to tarnish the reputation of the famous marks.

## COUNSEL

Bennett E. Cooper (argued), Vail C. Cloar, Alexandra Crandall, and David G. Bray, Dickinson Wright PLLC, Phoenix, Arizona, for Plaintiff-Counter-Defendant–Appellant.

Steven H. Hazel (argued) and Daniel Tenny, Attorneys, Appellate Staff, Civil Division; Brett A. Shumate, Assistant Attorney General; United States Department of Justice, Washington, D.C.; Timothy Courchaine, United States Attorney, Office of the United States Attorney, United States Department of Justice, Phoenix, Arizona; for Intervenor–Appellee.

Matthew B. Nicholson (argued), Claire R. Cahill, Lisa S. Blatt, Amy M. Saharia, and Dana S. Gotfryd, Williams & Connolly LLP, Washington, D.C.; Isaac S. Crum, Messner Reeves LLP, Phoenix, Arizona; for Defendant-Counter-Claimant–Appellee.

Rebecca Tushnet, Harvard Law School, Cambridge, Massachusetts, for Amici Curiae Law Professors.

Naresh Kilaru and Douglas A. Rettew, Finnegan Henderson Farabow Garrett & Dunner LLP, Washington, D.C., for Amici Curiae Trademark Law Professors.

## OPINION

M. SMITH, Circuit Judge:

A man walks into a bar.  Spying a distinct whiskey bottle, he designs a squeaky dog toy to parody it.  The toy is called "Bad Spaniels," and it looks like—you guessed it—a bottle of Jack Daniel's.  But instead of "Old No. 7 Brand Tennessee Sour Mash Whiskey," the toy says, "Old No. 2 On Your Tennessee Carpet."  It also says "43% POO BY VOL." and "100% SMELLY."  Unfortunately for Appellant VIP Products, LLC (VIP), Appellee Jack Daniel's Properties, Inc. (JDPI) did not appreciate the joke.

Instead, JDPI demanded that VIP stop selling Bad Spaniels, and VIP responded with this suit, seeking a declaratory judgment that it did not infringe or dilute JDPI's trademarks.  JDPI counterclaimed under the Lanham Act, 15 U.S.C. §§ 1114, 1125, for trademark infringement and dilution.  The Lanham Act has long protected trademarks from infringement by prohibiting unauthorized uses "that are likely to cause confusion about the source of a product or service."  *Moseley v. V Secret Catalogue, Inc.* (*Moseley I*), 537 U.S. 418, 428 (2003).  This appeal concerns a lesser-known provision that protects a select class of famous marks from dilution, which "occurs when consumers form new and different associations with the plaintiff's mark."  *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1054 (9th Cir. 2025) (quoting *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010)).

In 1996, Congress created the first federal cause of action for dilution.  *See* Federal Trademark Dilution Act of 1995 (FTDA), Pub. L. No. 104-98, § 3(a), 109 Stat. 985, 985 (1996).  The purpose of the antidilution provision was "to

protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." *Moseley I*, 537 U.S. at 431 (quoting H.R. Rep. No. 104-374, at 2 (1995)).[1]  To assuage First Amendment concerns, Congress included exceptions for "fair use," noncommercial use of registered marks, and "[a]ll forms of news reporting and news commentary." 15 U.S.C. § 1125(c)(4); *see Moseley I*, 537 U.S. at 421 n.1, 431.

Congress amended the FTDA in 2006 to "expressly . . . overrule the Supreme Court interpretation" in *Moseley I* of the tarnishment provision. *V Secret Catalogue, Inc. v. Moseley* (*Moseley II*), 605 F.3d 382, 385 (6th Cir. 2010); *see* Trademark Dilution Revision Act (TDRA), Pub. L. No. 109-312, 120 Stat. 1730 (2006).  In *Moseley I*, the Supreme Court held that a plaintiff seeking injunctive relief for dilution under the FTDA must demonstrate "actual dilution, rather than a likelihood of dilution." 537 U.S. at 433.  Congress promptly rejected that reading in the TDRA, which states that "the standard for proving a dilution claim is 'likelihood of dilution'" and confirms that "both dilution by blurring and dilution by tarnishment are actionable." *Moseley II*, 605 F.3d at 387 (quoting H. Rep. No. 109-23, at *5, *9 (2005), *as reprinted in* 2006 U.S.C.C.A.N. 1091, 1094, 1097).

---

[1] Blurring, which is not relevant to this appeal, typically involves "the whittling away of an established trademark's selling power through its unauthorized use by others upon dissimilar products." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (citation modified). Tarnishment "generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Id.*

To prove dilution of its mark by tarnishment, the plaintiff must establish that its mark is famous, the allegedly diluting mark is similar to the famous one, and the diluting mark creates a mental association with the famous mark likely to damage the famous mark's reputation. In this case, that burden falls to JDPI, who owns trademarks in the bottle and labeling of the Old No. 7 Tennessee Whiskey product that VIP's dog toy parodies.

JDPI argues that the Bad Spaniels toy dilutes its marks "by associating the famed whiskey with," as the Supreme Court put it, "dog excrement." *Jack Daniel's Props., Inc. v. VIP Prods., LLC* (*Jack Daniel's II*), 599 U.S. 140, 144 (2023). We hold that JDPI has not met its burden to show dilution by tarnishment and is therefore not entitled to injunctive relief under the TDRA. We vacate the district court's entry of a permanent injunction and judgment to JDPI and remand for entry of judgment to VIP.

## FACTUAL AND PROCEDURAL BACKGROUND

"This case is about dog toys and whiskey, two items seldom appearing in the same sentence." *Jack Daniel's II*, 599 U.S. at 144. JDPI owns the trademarks and trade dress used in connection with Jack Daniel's Brand whiskey products. The marks at issue here are those featured on Jack Daniel's Old No. 7 Tennessee Sour Mash Whiskey:



JDPI has held trademarks for "Jack Daniel's" since 1875 and "Old No. 7" since 1904. JDPI also holds a trademark for the three-dimensional square-shaped bottle it uses for Jack Daniel's Tennessee whiskey. And it holds additional trademarks for the arched Jack Daniel's logo, stylized label, and filigree. JDPI's marks have been used by the company continuously for over a century, except during Prohibition.

VIP designs, manufactures, and sells dog toys, including a "parody line" of toys shaped like beer bottles, wine bottles, and liquor bottles. Bad Spaniels joined the lineup in 2014.[2] VIP's owner Stephen Sacra arrived at the idea for Bad Spaniels at a bar as he brainstormed new parody products.

---

[2] Other members of the kennel have included "Smella RCrotches," "Heini Sniff'n," "Pissness," "Dos Perros," "Smella Arpaw," and "Doggie Walker."

Sacra pitched Bad Spaniels to VIP's graphic designer, and the two then designed a product that borrowed elements from Jack Daniel's whiskey to land the joke.

The result: "Bad Spaniels" replaced "Jack Daniel's"; "Old No. 2" replaced "Old No. 7"; and "Tennessee carpet" replaced "Tennessee whiskey." At the bottom of the toy are the words "43% POO BY VOL.," in place of standard alcohol-by-volume language, and "100% SMELLY." The top of the label features, as the district court put it, "a wide-eyed spaniel." The back of the toy includes a disclaimer stating that the "product is not affiliated with Jack Daniel Distillery." The toy is in the shape of a square liquor bottle, and, like Jack Daniel's Old No. 7 whiskey, features a black label with white lettering and filigree:



Shortly after VIP introduced Bad Spaniels to its product offerings, JDPI demanded that VIP stop selling the toy. This

litigation followed—and has unfolded for over a decade at every level of the federal judiciary.  VIP sued first, seeking a declaration that Bad Spaniels did not infringe or dilute JDPI's trademarks.  JDPI counterclaimed for trademark infringement and dilution pursuant to the TDRA and Arizona's state analogue, *see* Ariz. Rev. Stat. Ann. § 44-1448.01 (1998).  VIP asserted various affirmative defenses in reply, including that Bad Spaniels is a "protected parody" under the First Amendment.  VIP did not then assert that the TDRA is facially unconstitutional.

On cross-motions for summary judgment, the district court rejected VIP's fair-use defense, reasoning that the TDRA's fair-use exception does not apply because VIP uses "its Bad Spaniels trademark and trade dress as source identifiers of its dog toy, which takes its alleged parody product outside" the fair-use exclusion.  The case proceeded to a bench trial in 2017 on JDPI's dilution and infringement claims.  After the four-day trial, the district court concluded that Bad Spaniels infringed JDPI's trademarks and tarnished Jack Daniel's Old No. 7 Tennessee Sour Mash Whiskey trademarks and trade dress.  In 2018, the district court entered a permanent injunction in favor of JDPI.

VIP appealed, and we reversed on the issue of dilution and vacated on the issue of infringement.  *See VIP Prods., LLC v. Jack Daniel's Props., Inc.* (*Jack Daniel's I*), 953 F.3d 1170, 1176 (9th Cir. 2020).  As to infringement, we held that Bad Spaniels is an "expressive work" subject to the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). *Jack Daniel's I*, 953 F.3d at 1174–76.  We therefore concluded that the district court erred in finding infringement "without first requiring JDPI to satisfy" the *Rogers* test. *Id.* at 1176.  As to dilution, we held that because Bad Spaniels used JDPI's trade dress to "convey a humorous

message," that message was "protected by the First Amendment," and VIP was "entitled to judgment in its favor." *Id.*

On remand, the district court held that JDPI could not satisfy the *Rogers* test and granted summary judgment to VIP on infringement. The district court also entered summary judgment for VIP on the dilution claim. JDPI again appealed, and, at the parties' request, we summarily affirmed. *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, No. 21-16969, 2022 WL 1654040 (9th Cir. Mar. 18, 2022). The Supreme Court granted certiorari. 143 S. Ct. 476 (2022) (No. 22-148).

The Supreme Court vacated and remanded for further proceedings. *See Jack Daniel's II*, 599 U.S. at 163. With respect to infringement, the Court held that the *Rogers* test does not apply "when an alleged infringer uses a trademark . . . as a designation of source for the infringer's own goods." *Id.* at 153. Because VIP used the marks derived from Jack Daniel's as "source identifiers," JDPI's infringement claim depended on the likelihood of consumer confusion, and the Court remanded that issue for the lower courts' consideration in the first instance. *Id.* at 161.

With respect to dilution by tarnishment, the Supreme Court held only that the TDRA's noncommercial-use exception "does not shield parody or other commentary when its use of a mark is . . . source-identifying." *Id.* at 163. Because "VIP used the challenged marks as source identifiers," Bad Spaniels could not rely on that statutory exception. *Id.* at 162.

On remand from the Supreme Court, we requested briefing from the parties on whether to decide the remaining issues ourselves or remand to the district court. *VIP Prods.*

*LLC v. Jack Daniel's Props., Inc*., No. 21-16969, 2023 WL 12019678 (9th Cir. Aug. 14, 2023). In its supplemental brief, VIP argued that this court should consider, in the first instance, VIP's facial constitutional challenge to the tarnishment provision, "even though it was not presented to the district court before the 2018 judgment." We ultimately remanded the case to the district court.

After remand, the parties agreed that the district court could resolve all remaining issues on the record from the 2018 bench trial and filed cross-motions for judgment on the infringement and tarnishment claims. As pertinent here, VIP argued that JDPI failed to establish trademark dilution and that the TDRA's protections against dilution by tarnishment are facially unconstitutional. The federal government intervened to defend the constitutionality of the TDRA.

Following a hearing on the parties' cross-motions for judgment, the district court held that VIP was liable for dilution by tarnishment. The court declined to treat VIP's facial constitutional challenge after finding VIP waived it by failing to raise it in its original pleadings pursuant to Federal Rule of Civil Procedure 8(c). Finally, as to infringement, the district court concluded that JDPI had not shown a likelihood of consumer confusion and found in favor of VIP. Based on its tarnishment finding, the district court entered a permanent injunction and final judgment in favor of JDPI. VIP timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's legal conclusions following a bench trial de novo and findings of fact for clear error. *Montana v. Talen Mont., LLC*, 130 F.4th 675, 686 (9th Cir. 2025). Likelihood of dilution "is a fact-intensive inquiry" generally

reviewed for clear error.  *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014); *see Visa Int'l*, 610 F.3d at 1090; *accord* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:117 (5th ed. 2026).   The clear-error standard "does not inhibit [our] power to correct errors of law, including . . . a finding of fact that is predicated on a misunderstanding of the governing rule of law." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 (1984).

## ANALYSIS

The TDRA entitles the owner of a "famous mark that is distinctive" to enjoin the "use of a mark or trade name in commerce that is likely to cause . . . dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).  "Dilution by tarnishment" means an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Id.* § 1125(c)(2)(C).   A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A).  The Lanham Act also protects famous "trade dress," or "the overall appearance of a product and its packaging," from dilution. *Jack Daniel's II*, 599 U.S. at 145; *see* 15 U.S.C. § 1125(c)(4).

The parties dispute both the proper interpretation of the TDRA's tarnishment standard and its application to the evidentiary record.  In its 2025 order on the parties' cross-motions for judgment, the district court reasoned that JDPI must "prove that at least one of its asserted trademark and

trade dress rights was not only valid but also famous before the accused use began, and that the accused use is likely to cause negative associations that harms the reputation of the famous mark."  On appeal, JDPI adopts that framing of its dilution claim and argues that "whether a junior mark is tarnishing depends on how the defendant 'use[s]' the mark in the real world."  In JDPI's view, the thrust of actionable dilution by tarnishment is whether the junior mark is "*used in ways that create tarnishing associations*"—here, on a "poop-themed dog toy"—even where the junior mark does not "contain tarnishing language" on its face.  That matters because, as JDPI concedes, the "Bad Spaniels" mark "does not itself refer to defecation" and therefore is not facially tarnishing.  VIP counters that the TDRA requires a mark-to-mark comparison.  Under VIP's approach, JDPI was required to prove that each individual mark VIP parodied was famous and similar to VIP's junior imitation and that each of the latter marks was likely to cause reputational harm.

Understandably, JDPI seeks to protect the value of the marks that identify it as "the producer of a quality product" and, under federal law, are intended to ensure that it "will reap the financial rewards associated with the product's good reputation."  *Jack Daniel's II*, 599 U.S. at 146.  But the TDRA permits a specific and narrow mechanism for recovery on a tarnishment theory: it protects only famous marks from dilution and only where a similar junior mark is likely to tarnish its reputation because of the marks' association.  Thus, when conducting a tarnishment analysis, courts may only consider the dilutive effect of a junior mark that is similar to a corresponding famous mark.  Said differently, courts may not consider senior marks that are not famous or junior marks that are dissimilar when determining

the likelihood of reputational harm to the senior mark. And the burden to establish each element—fame, similarity, and likelihood of reputational harm—lies with the plaintiff.

JDPI falls short of meeting its burden here. The only marks JDPI proved famous are "Jack Daniel's" and its registered trade dress. All other senior marks, including "Old No. 7," therefore drop out of our analysis.[3] Consequently, the only similar junior marks for our review are "Bad Spaniels" and the dog toy's trade dress. Because neither "Bad Spaniels" nor the toy's trade dress facially tarnish JDPI's corresponding famous marks, and VIP does not dispute similarity, we consider whether either is "portrayed in an unwholesome or unsavory context" that is likely to tarnish the reputation of the famous marks. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 110 (2d Cir. 2009). We conclude that JDPI did not demonstrate a likelihood of dilution by tarnishment as to either the "Bad Spaniels" mark or the dog toy's trade dress.

## I. JDPI proved fame only as to "Jack Daniel's" and its trade dress.

We start with fame and similarity to determine which of VIP's corresponding junior marks factor into our tarnishment analysis. In its 2018 order on the infringement and dilution claims, the district court found that "Jack Daniel's trademarks and trade dress are famous and were famous before VIP introduced 'Bad Spaniels' in July 2014." In its 2025 order on the parties' cross-motions for judgment following remand, the district court declined to "delineate

---

[3] Although JDPI also takes issue with "43% POO BY VOL.," that phrase does not mimic or reproduce any famous, similar mark. The equivalent language on JDPI's product, "40% ALC. BY VOL. (80 PROOF)," is not a mark.

between 'Jack Daniel's' and 'Old No. 7' when finding that Jack Daniel's trademarks are famous," accepting JDPI's argument that "[a]ll of VIP's Bad Spaniels marks associate all of Jack Daniel's famous marks with poop, regardless of whether the marks themselves reference poop." The district court's failure to delineate between the relevant senior marks and to make findings on fame as to each erroneously lowered JDPI's burden of proof.

"Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). To obtain federal protection against dilution, a mark must be "truly prominent and renowned." *Id.* (citation modified). Thus, "[t]he standard for satisfying the famousness element of protection is a high one." *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1163 (S.D. Cal. 2023). Under the TDRA, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Courts "may consider all relevant factors" to determine "whether a mark possesses the requisite degree of recognition," including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the

mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark [has been] registered . . . on the principal register.

*Id.*

In other words, the mark must be a "household name." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870 (9th Cir. 2020). Because the TDRA uses the "general consuming public as the benchmark," a mark that has acquired only "niche fame" is not famous under the statute. *Id.* at 871 (citation modified) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 688 F.3d 1356, 1373 (Fed. Cir. 2012)). Examples of famous marks include "TIFFANY," "POLAROID," "ROLLS ROYCE," "KODAK," "CENTURY 21," and "OSCAR". *Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1362–63 (9th Cir. 1993).

The district court analyzed the statutory factors only after grouping the "Jack Daniel's whiskey" product and "Jack Daniel's trademarks" together. First, the court found that "Jack Daniel's has spent hundreds of millions of dollars to promote Jack Daniel's whiskey." Next, the court found that "Jack Daniel's has been the best-selling whiskey in the United States since 1997, exceeding 75 million cases and 10 billion dollars in sales." "In terms of recognition," the

district court found that "Jack Daniel's trademarks have been used continuously for over a century, except during Prohibition" and that "Jack Daniel's trademarks and trade dress have been viewed by millions of Americans in movies and television programs" as well as on "jackdaniels.com, which was visited more than four million times in 2014." Similarly, the district court found that "Jack Daniel's trade dress is prominently featured on social media pages for the brand" and that, "[b]ased on Jack Daniel's internal records, Jack Daniel's has achieved global recognition and aided consumer awareness of the Jack Daniel's brand is consistently around 98%." Finally, the district court found that JDPI's marks have "appeared on the Principal Register of the United States Patent and Trademark Office since before VIP's use began."

This record supports a finding that the "Jack Daniel's" mark and the whiskey's trade dress are famous, but not that "Old No. 7" is *also* distinctly famous. "Old No. 7" cannot be famous under the TDRA simply because "Jack Daniel's" is. *See Fruit of the Loom*, 994 F.2d at 1362 (affirming district court's conclusion that the combination of terms "FRUIT Of The LOOM" "constitute[s] [the] distinctive mark" and that "[t]he apple and grapes are embellishments that do not have an independent strength"). The TDRA does not permit borrowing fame from one senior mark to establish the fame of another. Rather, it requires courts to assess fame as to individual marks by applying "all relevant factors" to each allegedly famous mark. *See* 15 U.S.C. § 1125(c)(2)(A). The district court did not conduct any separate analysis as to "Old No. 7," and the record does not independently establish that "Old No. 7" is famous. JDPI therefore cannot base a tarnishment claim on "Old No. 7."

Because VIP concedes similarity, we turn to whether JDPI established a likelihood that "Bad Spaniels" and the toy's trade dress harm the reputation of "Jack Daniel's" and its registered trade dress.

## II.   "Bad Spaniels" and its trade dress are unlikely to harm the reputation of JDPI's famous marks.

The district court concluded that "'Bad Spaniels' creates a negative association with Jack Daniel's whiskey by associating whiskey with dog feces and is likely to tarnish Jack Daniel's trademarks." The district court disagreed with VIP that it "must undertake a 'correlative' analysis of the trademarks that VIP has appropriated for use on 'Bad Spaniels'" to find tarnishment. Instead, the court reasoned that the TDRA "prohibits the '*use* of a mark' that is likely to cause dilution by tarnishment by associating a junior mark with a similar famous mark." Thus, the district court explained:

> It is VIP's use of Jack Daniel's marks—on a poop-themed dog chew toy—that Jack Daniel's claims tarnish its trademarks, not "Bad Spaniels" itself when taken in isolation. That "Bad Spaniels" as a trademark does not tarnish Jack Daniel's does not also mean that "Bad Spaniels" the dog chew toy does not.

In evaluating whether the Bad Spaniels toy tarnishes "Jack Daniel's," the district court relied on the testimony of JDPI's expert, Dr. Itamar Simonson. It concluded that "[b]ecause Jack Daniel's produces a product intended for human consumption, association of Jack Daniel's marks with something like dog feces is" not only tarnishing, but "particularly detrimental."

In some circumstances, an association may dilute the famous mark even where the junior mark is not tarnishing on its face.  If a junior mark is not facially tarnishing, the context in which it is used may become relevant to the tarnishment analysis, depending on the facts of the case.  For example, using a famous mark or a closely related depiction on a product that is of poor quality or pornographic or illegal may be tarnishing if the other requisites are met.  *See e.g.*, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F. Supp. 366, 377 (S.D.N.Y. 1979), *aff'd*, 604 F.2d 200 (2d Cir. 1979); *Lorillard Tobacco Co. v. Cal. Imps., LLC*, 886 F. Supp. 2d 529, 536–37 (E.D. Va. 2012) (defendants' use of "NEWPROT" mark to sell cigarettes advertised as "spice" and potentially containing synthetic marijuana likely tarnished plaintiffs' famous "NEWPORT" mark); *Deere & Co., v. MTD Prods., Inc.*, 41 F.3d 39, 43 n.7 (2d Cir. 1994) (collecting examples).  The plaintiff still bears the burden of both establishing association and showing that the association dilutes the famous mark.  JDPI did not do so here.

JDPI maintains that the district court did not err in crediting Dr. Simonson's conclusions for this purpose. Those conclusions were based on the Associative Network Model (ANM)[4] and supported by "numerous empirical studies."  The problem is that Dr. Simonson did not conduct any studies on Bad Spaniels specifically, relying solely on generic consumer psychology research to conclude that "VIP's introduction of 'Bad Spaniels' into the marketplace resulted in reputational harm to Jack Daniel's trademarks

---

[4] The ANM was developed in the 1970s and measures how brands and ideas are represented in memory via the words, images, and associations that come to mind when people think about a particular brand.

and trade dress."  Dr. Simonson based that conclusion on a two-step analysis.  The first step asks "whether the allegedly dilut[ing] product will bring or call to mind the allegedly diluted mark"; if so, the second step asks "whether it has affected the brand equity and brand association of the allegedly diluted mark."

The district court accepted Dr. Simonson's conclusion that the first step was satisfied "because the point of VIP's product was to bring Jack Daniel's whiskey to mind."  And the district court adopted Dr. Simonson's conclusion at the second step because it was based on consumer psychology research and "certain conclusions that apply to all products and services regarding the impact of adding a negative association onto the association of the existing brand."  In particular, the district court credited Dr. Simonson's reliance on the ANM, based on his review of Jack Daniel's advertisements and the "key messages Jack Daniel's communicates regarding its brand values," in concluding that "positive mental associations . . . come to mind when evaluating Jack Daniel's before VIP introduced the 'Bad Spaniels' dog toy."  As to Bad Spaniels's tarnishing effect, the district court also agreed with Dr. Simonson that "consumer psychology research . . . establish[es] that when food or beverage is associated with defecation, disgust is generated in the consumer's mind with respect to that food or beverage."

Dr. Simonson testified that the ANM he created for "the Jack Daniel's product" following the introduction of Bad Spaniels "add[ed] defecation as an additional node," which, through a "largely unconscious process," "color[s] the brand image."  Noting that "there has been a great deal of research specifically on" the feeling of disgust created by "defecation, feces, [and] poop," Dr. Simonson explained that "[t]he

disgust generated by . . . poo by weight, Old No. 2, . . . or defecation more generally" amounts to "an extreme example of likelihood of tarnishment" when associated with a consumable like Jack Daniel's whiskey.  Dr. Simonson acknowledged that "[n]o [consumer] would think that there's poo in the Jack Daniel's product" but that VIP nevertheless "created a mental association between Jack Daniel's and poo, or Old No. 2, and therefore, for those people exposed to this product, [VIP] diluted or more specifically, tarnished the Jack Daniel's whiskey."

Dr. Simonson's generic testimony was insufficient to prove a likelihood of dilution by tarnishment with regard to these particular products.  To start, Dr. Simonson's conclusions with respect to "Old No. 2" are inapposite.  As we have explained above, JDPI did not show that "Old No. 7" is famous under the TDRA, so we do not consider any dilutive effect of "Old No. 2" as a trademark.

Next, even taking together all of Bad Spaniels's lavatorial references, Dr. Simonson's testimony does not establish a harmful association between any such reference and JDPI's two famous marks—"Jack Daniel's" and its registered trade dress.[5]  Dr. Simonson's testimony does not

---

[5] We have "accepted th[e] rationale" that "the purpose of anti-dilution law . . . is directed against the whittling away of plaintiff's mark," and such "[w]hittling away will not occur unless there is at least some subliminal connection in a buyer's mind between the two parties' uses of their marks." *Fruit of the Loom*, 994 F.2d at 1363; *accord Acad. of Motion Pictures Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991).  That "require[s] a threshold showing of some mental association between the protected mark and the alleged diluter." *Fruit of the Loom*, 994 F.2d at 1363; *see also* McCarthy, *supra*, § 24:116 ("For . . . tarnishment to be likely, the marks must at least be

show that any association between either "Bad Spaniels" and "Jack Daniel's" or between the products' similar trade dress is likely to damage the reputation of JDPI's famous marks. *See, e.g.*, *Anheuser-Busch, Inc. v. VIP Prods., LLC*, 666 F. Supp. 2d 974, 988 (E.D. Mo. 2008) (denying preliminary injunction for dilution by tarnishment regarding "Buttwiper" dog toy where plaintiff put forth "no evidence that 'Buttwiper' has harmed the reputation of 'Budweiser'"); *Starbucks*, 588 F.3d at 110 ("That a consumer may associate a negative-sounding junior mark with a famous mark says little of whether the consumer views the junior mark as harming the reputation of the famous mark.").

To the extent Dr. Simonson's testimony established any negative association, it was between some broad concept of defecation and consumption of food and drink products. Dr. Simonson acknowledged that he did not conduct a study on whether the Bad Spaniels dog toy itself creates harmful associations. Instead, he opined "that if you associate any food or beverage with defecation, you are creating disgust with respect to that food or beverage." He also opined that "it really doesn't matter whether" poop-themed references are made "on this thing that looks very much like a Jack Daniel's bottle, or any other product that creates an association between Jack Daniel's and defecation." But Bad Spaniels is a parodic *dog toy* not intended for human consumption. There is no evidence in the record from which a court could reasonably infer that scatological references made on a dog toy have the same likelihood of generating disgust as identical references on a consumable product

---

similar enough that a substantial segment of the target group of customers sees the two marks as essentially the same.").

meant for humans might.  Dr. Simonson's opinion to the contrary is pure conjecture.

That Bad Spaniels "projects an image at odds with [JDPI's] reputation for high-quality . . . products for humans" does not prove a likelihood of reputational harm. *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 422–23 (S.D.N.Y. 2002).  Although actual dilution is not required under the TDRA, a likelihood of dilution is.  *See, e.g.*, *id.* (finding plaintiff did not "put forth any evidence supporting" the conclusion that its "mark will suffer negative associations through defendant's use" on dog-friendly fragrance product); *Tetley, Inc. v. Topps Chewing Gum, Inc.*, 556 F. Supp. 785, 794 (E.D.N.Y. 1983) (rejecting plaintiff's state tarnishment claim where plaintiff claimed that "defendant's childish humor, in choosing the rhyme word 'flea' to parody its tea, will result in images of impurity, adulteration, and contamination in the minds of its customers" but "offered absolutely no evidence . . . that anyone would actually arrive at such a conclusion"); *Clinique Lab'ys, Inc. v. Dep Corp.*, 945 F. Supp. 547, 562 (S.D.N.Y. 1996) (finding that "no evidence suggests that Clinique's trademark or trade dress will suffer negative associations through Dep's use of the Basique mark" on its cleansing products in the same industry).

Dr. Simonson's opinions cannot bear out JDPI's tarnishment claim for another critical reason: the ANM ignores that Bad Spaniels is an obvious parody. [6]  The

_____

[6] The parodic nature of VIP's product does not, on its own, dispose of JDPI's tarnishment claim in light of the Supreme Court's holding that VIP could not avail itself of the TDRA's statutory exclusion for fair-use parodic works. *Jack Daniel's II*, 599 U.S. at 161–63.  But that holding regarding a statutory coverage exception did not concern whether parody

Supreme Court recognized that "[b]eyond source designation, VIP uses the marks at issue in an effort to 'parody' . . . Jack Daniel's." *Jack Daniel's II*, 599 U.S. at 153. That "expressive aspect" mattered "in assessing confusion" for purposes of JDPI's infringement claim "because consumers are not so likely to think that the maker of a mocked product is itself doing the mocking." *Id.*; *see also id.* at 161 ("[A] trademark's expressive message— particularly a parodic one, as VIP asserts—may properly figure in assessing the likelihood of confusion."). So too, parody is a relevant factor in evaluating likelihood of dilution.

We agree with our sister circuits that even where "parody is not automatically a complete defense to a claim of dilution" because "the defendant uses the parody as its own designation of source," the TDRA "does not require a court to ignore the existence of a parody that is used as a trademark, and it does not preclude a court from considering parody as part of the circumstances to be considered for determining whether the plaintiff has made out a claim for dilution." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 266–67 (4th Cir. 2007) (emphases omitted); *see also Deere & Co.*, 41 F.3d at 45 (explaining that "[n]ot every alteration will constitute dilution, and more leeway for alterations is appropriate in the context of satiric expression and humorous ads for noncompeting products"); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 508 (2d Cir. 1996) (finding "no likelihood of dilution under a tarnishment theory," in part because the Muppets

---

can factor into a tarnishment analysis or suggest any reason why it may not.

Spa'am character satirized the Spam mark, "parody inheres in the product," and "[w]ithout Spa'am, the joke is lost").[7]

The "clarity of [VIP]'s parodic intent" impacts the likelihood that JDPI's famous marks are harmed by association with VIP's product. *Hormel*, 73 F.3d at 503. "A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is *not* the original and is instead a parody." *Id.* (citation modified); *see also Haute Diggity Dog*, 507 F.3d at 267 ("Even as Haute Diggity Dog's parody mimics the famous mark, it communicates simultaneously that it is not the famous mark, but is only satirizing it."). That dual message impacts the dilution analysis because, where a parody is successful and "not particularly subtle," it is a common-sense conclusion that consumers are more "likely to see [it] as the joke it was intended to be." *Hormel*, 73 F.3d at 503. Thus, the Fourth Circuit has explained that where an allegedly diluting product creates a "successful parody," the "facts impose on [the plaintiff] an increased burden to

---

[7] Several district courts have come to similar conclusions. *See, e.g.*, *Tommy Hilfiger*, 221 F. Supp. 2d at 423 (finding that "no rational jury" could conclude that "a designer [perfume] label has anything to lose from mere association with pets" by virtue of defendant's "Timmy Holedigger" pet perfume, "particularly where the entire association is a light-hearted if somewhat heavy-handed parody"); *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 625 F. Supp. 48, 57 (D.N.M. 1985), *aff'd*, 828 F.2d 1482 (10th Cir. 1987) ("Where the association is essentially a harmless, clean pun, which merely parodies or pokes fun at the plaintiff's mark, tarnishment is not likely."); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, No. 95 Civ. 5473, 1995 WL 567369, at *12 (S.D.N.Y. Sep. 25, 1995) (recognizing the "humorous reference" Spa'am makes to SPAM and finding "it incredible that whatever 'affirmative associations' the SPAM brand has come to convey in the face of this negative humor would be tarnished by [defendant's] not particularly offensive joke").

demonstrate that the distinctiveness of its famous marks is likely to be impaired" to obtain an injunction under a blurring theory of dilution. *Haute Diggity Dog*, 507 F.3d at 267. The district court here recognized in its infringement analysis that Bad Spaniels is a "parodic product" that was "intended as a parody." The parodic nature of Bad Spaniels warranted discussion in the context of tarnishment.

After all, no matter how similar to its famous counterpart, a parodic junior mark ultimately "relies upon a difference from the original mark, presumably a humorous difference, in order to produce its desired effect." *Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987). Dr. Simonson's analysis ignored the effect of a "humorous difference" on whether Bad Spaniels harms the reputation of JDPI's famous marks. To be sure, the district court credited Dr. Simonson's conclusion that the first step of his dilution analysis was satisfied "because the point of VIP's product was to bring Jack Daniel's whiskey to mind"; that conclusion was based on VIP's transparently parodic use. But there is no evidence that Dr. Simonson considered the parodic nature of VIP's junior marks when building Jack Daniel's ANM, or that satire otherwise factored into his analysis of the mental association between the disputed marks. Parody, however, is inherent in the Bad Spaniels product—indeed, as Dr. Simonson recognized, it was the "whole point." Failing to consider the effect of VIP's obvious parody on the likelihood of tarnishment was a critical misstep, and the district court erred in adopting the conclusions that followed.

In sum, the burden of proving a likelihood of dilution "always remains with the plaintiff." McCarthy, *supra*, § 24:89; *cf. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118–20 (2004) (burden of

proving infringement under the Lanham Act, including likelihood of confusion, belongs to the plaintiff, and there is no "burden to show nonconfusion on a defendant"). The district court erred in concluding that JDPI met that burden and that Dr. Simonson's testimony was sufficient to prove a likelihood of dilution beyond speculation.[8]

## CONCLUSION

We hold that JDPI is not entitled to an injunction for dilution by tarnishment under the TDRA. We accordingly **VACATE** the district court's permanent injunction to JDPI and **REMAND** for entry of judgment in VIP's favor.[9]

---

[8] JDPI contends that "a plaintiff seeking to establish a likelihood of dilution is not required to go to the expense of producing expert testimony or market surveys," *Visa Int'l*, 610 F.3d at 1091. But JDPI *has* offered, and indeed rested its case on, expert testimony to establish this element of its tarnishment claim. We may accordingly review that evidence for sufficiency. That JDPI "may rely entirely on the characteristics of the marks at issue" to prove likelihood of dilution does not avail it, given JDPI's concession that "Bad Spaniels" and its trade dress are not facially tarnishing. *Id.*

[9] Because we reverse and remand as to JDPI's tarnishment claim, we do not address VIP's other arguments, including its constitutional challenge to the tarnishment provision. *See Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).